**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN P.,[1] | Case No. 2:19-cv-09530 AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| ANDREW SAUL, | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

**BACKGROUND**

In September 2017, Plaintiff applied for disability insurance benefits, alleging disability beginning August 23, 2014. Plaintiff's application was denied initially and upon reconsideration. (Administrative Record ["AR"] 15.) A hearing took place on

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

June 18, 2019 before an Administrative Law Judge ("ALJ"). Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified at the hearing. (AR 32-48.) On July 2, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 12.)

In this decision, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder and osteoarthritis of the bilateral knees status post left knee arthroscopy." (AR 17.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform "medium work . . . except: can perform simple, routine tasks in jobs that require no more than occasional interaction with the general public." (AR 20.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was unable to perform his past relevant work but could perform other jobs existing in significant numbers in the national economy. (AR 24.) Accordingly, the ALJ found Plaintiff not disabled. (AR 25.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-5), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ properly discounted Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### A. Plaintiff's Subjective Complaints

Plaintiff indicated that bipolar disorder is the "primary" condition that limits his ability to work. (AR 201.) He explained that his bipolar disorder causes him to stay inside his house a lot, makes it difficult to adjust "to change or public exposure," and would make maintaining a job hard because his priority is managing his symptoms. (AR 201.)

At the administrative hearing, Plaintiff testified that his preoccupation with his emotions keeps him from being able to work. (AR 38.) Plaintiff stated that he feels "trapped in [his] mind most of the time" and spends "all day fighting [himself], fighting memories and mood swings." (AR 38.) Plaintiff indicated that he cannot "deal with [his] emotions like a normal person." (AR 38.) Plaintiff added that just being at the hearing was "absolutely killing" him. (AR 38.)

In 2015, Plaintiff started going back to school but could not finish due to multiple anxiety attacks. (AR 40.) Plaintiff testified that the only exam he was able to finish was math. (AR 40.) Even during that math final, Plaintiff stated that he "was crying," and the professor had to "stand next to [him] and like, rub [his] back and try to calm [him] down." (AR 40.) Plaintiff noted that it took him over an hour to finish the final, and he "never went back to campus after that." (AR 40.)

Plaintiff also stated that in his free time, he "sometimes play[s] videogames," spends time with his family, and uses marijuana "sporadically." (AR 39-41.) Plaintiff spends most of the day trying to "help out around the house, like everywhere it's needed . . . . do the dishes, and clean up, and sweep, and stuff . . . . wash clothes." (AR 42.) Plaintiff's wife will often have to finish the chores because he will get distracted by something that reminds him of being in the Air Force. (AR 42-43.)

Plaintiff has a dog that is being trained as a "service animal" and will "be with [him] at all times." (AR 39-40.) Plaintiff also confirmed that he is able to take care of his (less than six-year-old) son while his wife works. (AR 39; *see also* AR 811). Plaintiff stated that he takes his son "where he needs to go" and is "pretty much just his chauffer." (AR 42.)

According to Plaintiff, his current "level" of symptoms began in June 2013 when he was hospitalized in a behavioral facility and first diagnosed with bipolar disorder. (AR 38-39.) However, Plaintiff also noted that medications and talk therapy "are helping" with his symptoms. (AR 41.) When discussing talk therapy, Plaintiff described himself as a "habitual appointment misser" because he will get "distracted" or decide that he can skip the appointment because he is feeling "good today." (AR 41.) Plaintiff stated that he tries to keep a "routine" as much as possible and "let [his] meds do what they need to do." (AR 41.)

In a self-completed form, Plaintiff also listed the following as limiting his ability to work: "obstructive sleep apnea, hypertension, tinnitus, degenerative arthritis of right and left knee, degenerative disc, disc of the lumbosacral spine, tenosynovitis of left ankle." (AR 192.) Plaintiff did not discuss these conditions at his hearing (AR 32-48) or in his Memorandum in Support of Plaintiff's Complaint (ECF No. 20).

**B.  Relevant Law**

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**C. Analysis**

The ALJ found Plaintiff's subjective complaints to be less than fully credible. As discussed below, the ALJ's decision provides several reasons for that determination. (AR 20-23.)

1. Lack of Objective Medical Evidence

The ALJ concluded that although Plaintiff's impairments result in some functional limitations, the medical evidence does not support the severity of Plaintiff's allegations. (AR 20.) So long as it is not the only reason for doing so, an ALJ may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling symptoms. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a

factor that the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same).

Here, the ALJ began by summarizing the medical record concerning Plaintiff's complaints of knee pain and "instability." (AR 21.) The ALJ pointed out that "observations throughout the record" demonstrate that Plaintiff has "a normal gait." (AR 21; *e.g.,* AR 1288.) And, in 2016, Plaintiff indicated that he walked "two hours per day logging 250 miles in the last 30 days." (AR 21, 1072.) Plaintiff does not object to the ALJ's characterization of his physical impairments. (*See* ECF No. 20 at 1-8; ECF No. 22 at 1-4.)

As to Plaintiff's mental symptoms, the ALJ characterized Plaintiff's examinations as "routinely unremarkable." (AR 22.) The ALJ began by noting that Plaintiff "initially sought mental health treatment in 2013" while in the Air Force. (AR 21, 725.) After self-reporting anxiety, depressive symptoms, and impulsive behavior, Plaintiff was diagnosed with bipolar disorder at a civilian hospital and placed on a "heavy medication regimen." (AR 21, 725.) However, a military mental health clinic conducted further testing that "did not substantiate bipolar disorder and instead assessed malingering." (AR 21, 725.) "Given [Plaintiff's] unpredictable behavior and discrepancy in symptom reports, he was unable to be reinstated to flying regardless of diagnosis." (AR 21, 728.)

In 2014 and 2015, additional psychiatric evaluations confirmed Plaintiff's original bipolar diagnosis. (AR 21, 914, 918.) During 2015, Plaintiff participated in "consistent therapy" to combat complaints of depression, mania, and difficulty concentrating. (AR 21, 781-874, 1056.) Plaintiff engaged in "supportive psychotherapy" and took a "variety of medications for the management of psychological symptoms." (AR 21, 811.) During this time, Plaintiff indicates he was smoking marijuana one to two times per day. (AR 21, 811, 815 ("[Patient] is also encouraged to decrease THC use and is aware that this could affect concentration").) In 2015, Plaintiff reported that he had been exercising and eating healthy. (AR 21,

811.) Plaintiff also continually reported that he had been "feeling better." (AR 21; *e.g.,* 811, 814, 815, 817, 820, 822, 831, 833.) Plaintiff went back to school to study chemistry, pre-calculus, and U.S. history. (AR 21, 811.) During psychiatric evaluations in 2015, Plaintiff had eye contact with normal limits, appropriate grooming, goal directed thought processes, intact recent and remote memory and focused attention and concentration. (AR 21-22, 812, 815.)

The ALJ next cited an October 2016 mental health note, which recorded that medication was still "helping [Plaintiff] stay focused at home with childcare and house cleaning and money management. [Plaintiff] is walking about 2 hrs. a day." (AR 22, 1072-73 ("[Plaintiff] reports significantly less temper outbursts . . . . [Plaintiff's] [c]ollege semester is over and he has decided to take a break from that level of education. He may consider it in the future.").) In an August 2017 evaluation, Plaintiff again indicated that his medication made his "mood more stable and improved," although he still experienced "bouts of sadness" ("[less than three] days once in past [month]"). (AR 22, 1618.) The ALJ also cited mental status examinations from November 2017 and December 2017. (AR 22.) The ALJ summarized that, at both examinations, Plaintiff demonstrated casual dress, a cooperative attitude, a pleasant mood, logical thought process and fair insight/judgment.[2] (AR 22, 1302, 1578.)

The ALJ discussed a mental status examination in March 2018 during which Plaintiff continued to demonstrate "good grooming/hygiene, appropriate eye contact, logical thought processes, good insight and good reliability." (AR 22, 1409.) This March 2018 progress note outlined the following treatment plan: "[c]ontinue current medications," "[d]iscuss importance of daily exercise and healthy diet," "[c]ontinue

---

[2] Though not specifically quoted by the ALJ, this November 2017 examination also mentioned the following: Plaintiff "has been stable since 3/2017. Prior to 3/2017, [Plaintiff] was more depressed . . . . [Now, Plaintiff] gets 6-7 hours of sleep . . . . At this point, [Plaintiff] does not want changes to his regimen." (AR 1303-1304.)

to monitor medication and adjust dosage accordingly," and return to clinic "in about 3 months." (AR 22, 1410.)

The ALJ acknowledged that in 2018, Plaintiff was admitted to an emergency department for depression after having "some struggles with his wife." (AR 22, 1553.) Plaintiff explained that he felt suicidal and had a depressive episode "triggered by financial issues, adjustment to new home and him feeling a lack of support from his wife." (AR 22, 2647.) The ALJ noted that Plaintiff discharged himself. (AR 22, 1467-1466.) Also, in January 2019, Plaintiff stated he was "struggling with feelings of anxiousness, feeling extremely stressed and smoking more 'blunts' lately." (AR 22, 2929-2930.) At that time, Plaintiff continued to show "good grooming, logical and coherent thought processes, and normal recent and remote memory with good insight and unimpaired judgment." (AR 22, 2968; *see also* AR 2969 ("[P]atient . . . . [r]eports symptoms are stable.").) Based upon the foregoing record, the ALJ limited Plaintiff to "simple, routine tasks in jobs that require no more than occasional interaction with the general public." (AR 22.)

Plaintiff argues that the "ALJ improperly failed to consider" additional medical records demonstrating that Plaintiff has symptoms consistent with his subjective complaints. (ECF No. 20 at 4-6.) An ALJ may not rely on a selective and incomplete consideration of the medical record. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's adverse credibility determination because ALJ did not account for record "as a whole," but rather relied on "cherry-picked" evidence). At the same time, so long as the ALJ accurately relies upon the record as a whole, he or she is not required to discuss every piece of evidence in the record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). To support that the ALJ did not conduct a "full review," Plaintiff cites four parts of the medical record. (ECF No. 20 at 4-6.) First, Plaintiff cites office treatment records from VA Southern Oregon Rehab Center dated 2015 through 2016. (ECF No. 20 at 5; AR 1145.)  On this page, the Rehab Center listed symptoms that

interfered with Plaintiff's "interpersonal relatedness" – irritability or outbursts of anger, apathy, anhedonia, detachment, restricted range of affect, panic attacks, worthlessness, avoidance of thoughts/feelings associated with traumatic events. (AR 1145.) Although the ALJ did not cite this particular page or quote each of those symptoms, Plaintiff fails to explain how this differs from the evidence that the ALJ addressed. For example, the ALJ explicitly noted that Plaintiff has experienced "depression, mania and difficulty concentrating," has felt a "lack of support," has "recurrent bouts of sadness," has experienced "struggles with his wife," has felt "extremely stressed," and can "'[freak] out' because tasks become overwhelming." (AR 21-22.) Furthermore, the ALJ necessarily considered Plaintiff's difficulties with "interpersonal relatedness" by limiting Plaintiff to jobs requiring "no more than occasional interaction with the general public." (AR 22.)

Second, Plaintiff cites a medical record from 2013 indicating that Plaintiff "reported feeling: depression and anxiety . . . sadness, crying spells . . . drop in concentration . . . and at times a passive death wish." (ECF No. 20 at 5; AR 492-493.) While the ALJ may not have cited the exact record identified by Plaintiff, the ALJ did affirmatively acknowledge that in 2013 Plaintiff "self-reported anxiety and depressive symptoms." (AR 21.)

Third, Plaintiff cites two pages of medical records that discuss symptoms like "difficulty focusing" that Plaintiff had "before the age of twelve, in at least two different settings for at least six months." (ECF No. 20 at 5; AR 2454-2455.) In ECF No. 20, Plaintiff does not mention that these symptoms – which include "runs and climbs about when inappropriate" and "unable to play quietly" – were from before the age of twelve. (ECF No. 20 at 3, 5; ECF No. 22 at 2; AR 2454-2455.) And although Plaintiff's wife agreed that some symptoms continue to present themselves, this examination does not specify the severity or frequency of any currently present symptoms in Plaintiff. (AR 2454-2455 (at the time, Plaintiff denied depressive

symptoms and stated "[I'm] in a good place.").) Moreover, the ALJ did in fact note that Plaintiff can experience "difficulty concentrating." (AR 21.)

Fourth, Plaintiff asserts that the ALJ did not take into consideration an examination during which Plaintiff experienced anxiety, poor eye contact, and rapid speech.[3] (ECF No. 20 at 5; AR 1281-1284.) However, the ALJ did cite to this examination and mentioned that, regardless of any symptoms, Plaintiff was able to perform household chores, cook, watch television, and exercise. (AR 23, 1282.)

Nothing that Plaintiff points to undermines the ALJ's summary and characterization of the record as a whole. Further, the ALJ's characterization of the medical evidence is supported by substantial evidence, and it was reasonable to conclude that the minimal findings failed to support Plaintiff's allegations of disabling symptoms and limitations. Accordingly, the ALJ properly relied upon the medical evidence as one of several factors that discount Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

## 2. Effectiveness of Treatment

After reviewing the medical record, the ALJ found that Plaintiff's "medication is reportedly helpful." (AR 22.) Generally, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). Accordingly, substantial evidence of effective treatment provides a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499

---

[3] Although Plaintiff is correct that the examiner remarked that Plaintiff's rate of speech was rapid, the examiner also found that Plaintiff's speech was "normal in tone," "normal" in volume, and "clear and coherent." (AR 1283.)

1   (9th Cir. 2018); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008).

2       Here, the ALJ found consistent improvement in Plaintiff's mental health from

3   treatment and medication – as opposed to waxing and waning of symptoms. *Cf.*

4   *Garrison*, 759 F.3d at 1017 (ALJ may not reject a claimant's testimony regarding

5   mental health issues if symptoms merely "wax and wane" during the course of

6   treatment). The ALJ's characterization of the record is supported by substantial

7   evidence. For example, the ALJ noted that as early as 2015, Plaintiff reported that

8   "he has been feeling better." (AR 21, 811.) During that evaluation, Plaintiff also

9   reported that "[h]e does still experience some symptoms of anxiety and depression,

10  but feels he can handle it. He feels things are much better than they were several

11  months ago." (AR 21, 811.) The ALJ then summarized a 2016 mental health note,

12  which reported that Plaintiff's medication "is helping [Plaintiff] stay focused at home

13  with childcare and house cleaning and money management." (AR 22, 1072-73

14  ("[Plaintiff] reports significantly less temper outbursts . . . .").) And, in 2017, Plaintiff

15  again reported that, because of his medication, his mood continued to "[improve]"

16  and was "more stable." (AR 22, 1618.) Notably, Plaintiff does not contest the ALJ's

17  characterization of the effectiveness of his medications. (ECF No. 20; ECF No. 22;

18  *see also* AR 41 ("The meds are helping, and so was . . . the talk therapy with my

19  counselors.").)

20      Accordingly, the ALJ properly relied upon the effectiveness of treatment and

21  medications in controlling symptoms to discredit Plaintiff's testimony regarding the

22  disabling effects of his impairments. *See*, *e.g.*, *Tommasetti*, 533 F.3d at 1040 (ALJ

23  properly rejected claimant's subjective complaints where medical records showed

24  that she responded favorably to physical therapy and medication); *Abreu v. Astrue*,

25  303 F. App'x 556, 558 (9th Cir. 2008) (ALJ provided legally sufficient reason to

26  reject claimant's testimony where ALJ observed that, "[f]or the most part, medication

27  regimens appear to be effective in pain control"); *Harris v. Berryhill*, 2017 WL

28  5634107, at *3 (C.D. Cal. Nov. 22, 2017) (evidence that plaintiff's pain and

symptoms improved with epidural steroid injections constituted clear and convincing reason to discount plaintiff's credibility); *Herrera v. Colvin*, 2014 WL 3572227, at *7 (C.D. Cal. July 21, 2014) (evidence that plaintiff's pain improved with medication and exercise was clear and convincing reason to discount subjective complaints).

### 3. Daily Activities

The ALJ found that Plaintiff's reported daily activities are inconsistent with the duration, frequency, and severity of his alleged limitations. (AR 23.) Generally, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165.

The ALJ found that – as opposed to Plaintiff's alleged limitations – his "daily activities support an ability to perform simple, routine tasks with limited social interaction." (AR 23.) The ALJ specified that Plaintiff admitted to "a wide variety of daily activities." (AR 22.) For example, Plaintiff's activities include dressing and bathing himself, getting along with friends and family, watching television, exercising, paying his own bills, handling his own money, performing household chores, and cooking. (AR 22-23, 1282.) The ALJ also pointed out that Plaintiff takes care of his young child while his wife is working. (AR 20, 22, 39, 1072.)

Plaintiff contends that his daily activities are consistent with his allegations of disabling limitations because he "did not testify to total incapacity but rather that while he was capable of accomplishing certain tasks, he was greatly impaired by his ongoing psychological symptoms." (ECF No. 20 at 6.) The Commissioner counters that Plaintiff's activities show that he exaggerated his limitations and that "Plaintiff's reports to his medical providers always indicated that he was more capable than he alleged." (ECF No. 21 at 7.)  The Court finds that substantial evidence supports the ALJ's conclusion in this regard and that it is another valid reason for discounting Plaintiff's credibility.

Moreover, even assuming that the ALJ erred in relying on Plaintiff's daily activities in assessing his credibility, any error was harmless in light of the other

legally sufficient reason provided by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record), *superseded by regulation on other grounds*; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (despite the invalidity of one or more of an ALJ's stated reasons for discounting a claimant's credibility, the court properly may uphold the ALJ's decision where the ALJ stated sufficient valid reasons).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED:  8/19/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE